IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Jaime Aldos Leonardo, Jr., | ) | No. CV 07-0545-PHX-SMM (ECV) |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| Phillip Crawford, | ) | |
| Respondent. | ) | |

TO THE HONORABLE STEPHEN M. MCNAMEE, UNITED STATES DISTRICT JUDGE:

Pending before the court is Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  Doc. #1.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner, who is a native and citizen of the Philippines, was admitted to the United States on or about March 15, 1995, upon presentation of an immigrant visa issued to him at the American Embassy in Manila, Philippines approximately one month earlier. Doc. #12, Exh. 1.  Respondent provides records showing that Petitioner procured his visa by misrepresenting himself as the "single" (never been married) son of an American citizen. Doc. #12, Exh. 2, Attachment 1.  Respondent's records show that Petitioner was married on January 24, 1974 to Carmelita Balino. Doc. #12, Exh. 3, Attachment 4.  Respondent did not disclose his marriage on his immigrant visa application. Doc. #12, Exh. 2, Attachment 1,

1 Doc. #1 at 3. Additionally, between 1999 and 2004, Petitioner was convicted of several drug
2 offenses in California, both felonies and misdemeanors. Doc. #1 at 4, Doc. #12, Exh. 3,
3 Attachments 5-9. On December 13, 2005, the government issued a Notice to Appear
4 charging that Petitioner was subject to removal under § 237(a)(2)(A)(iii) of the Immigration
5 and Nationality Act for his conviction of an aggravated felony (based on the drug offenses)
6 following his admission to the United States. Doc. #12, Exh. 5. The Notice to Appear also
7 charged that Petitioner had been convicted of a controlled substance offense and that he had
8 procured a visa or admission into the United States by fraud or wilfully misrepresenting a
9 material fact. Id. Petitioner was taken into custody on the same day the Notice to Appear
10 was issued. Doc. #12, Exh. 4.

11 After three continuances to allow Petitioner time to retain an attorney, Petitioner
12 appeared with counsel before an Immigration Judge (IJ) on January 30, 2006. Doc. #12,
13 Exh. 12, Transcript at 16-22. Removal proceedings were held on February 14, March 14 and
14 April 26, 2006. Doc. #12, Exh. 12, Transcript at 23-57. At the hearing on April 26, the IJ
15 sustained the allegations in the Notice to Appear and ordered Petitioner to be removed to the
16 Philippines. Doc. #12, Exh. 12, Transcript at 54-57. The IJ further determined that
17 Petitioner was not eligible for cancellation of removal or any other forms of relief. Id. On
18 August 29, 2006, the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal and
19 affirmed the IJ's decision. Doc. #12, Exh. 11.

20 Petitioner then sought review in the Ninth Circuit Court of Appeals by filing a Petition
21 for Review on October 3, 2006. Doc. #12, Exh. 15. The case remains pending before the
22 Ninth Circuit as of the date this report and recommendation was signed. See Leonardo v.
23 Mukasey, No. 06-74750. The Ninth Circuit has granted Petitioner an automatic temporary
24 stay of removal under Ninth Circuit General Order 6.4(c)(1). Id.

25 Petitioner filed his *pro se* Petition for Writ of Habeas Corpus in this court on March
26 14, 2007. Doc. #1. Petitioner alleges that since the removal proceedings began, he has been
27 held in custody without bond or an order of supervised release. Doc. #1 at 5. He contends
28

- 2 -

1 that his lengthy detention while his removal proceedings have been pending is unlawful. He
2 asks the court to order him released on bond or under supervision.

3 On June 15, 2007, Respondents filed a Response in Opposition to Petition for Writ
4 of Habeas Corpus, in which they contend that Petitioner's current detention is lawful because
5 he is subject to mandatory detention under 8 U.S.C. § 1226(c). Doc. #12 at 2. On July 6,
6 2007, Petitioner filed a Reply. Doc. #13.

**DISCUSSION**

**A.    Legal Standards**

9 It is clearly established that the Fifth Amendment entitles aliens to due process of law
10 in removal proceedings. Reno v. Flores, 507 U.S. 292, 306 (1993). In Zadvydas v. Davis,
11 533 U.S. 678 (2001), the Supreme Court examined the detention of aliens after entry of a
12 final removal order. Generally, the Government is required to remove an alien in its custody
13 within ninety days of the final removal order. See 8 U.S.C. § 1231(a)(1)(A)-(B). The
14 Government may, however, detain an inadmissible or criminal alien beyond the statutory
15 removal period. 8 U.S.C. § 1231(a)(6). But the Government's ability to detain an alien under
16 this provision is not unlimited. Zadvydas, 533 U.S. at 699. To avoid a "serious
17 constitutional threat," the Supreme Court interpreted the post-removal-period detention
18 statute to prohibit continued detention "once removal is no longer reasonably foreseeable...."
19 Id. Detention of an alien subject to a final order of removal for up to six months is
20 presumptively reasonable given the time needed to accomplish the removal. Id. at 701.
21 "After this 6-month period, once the alien provides good reason to believe that there is no
22 significant likelihood of removal in the reasonably foreseeable future, the Government must
23 respond with evidence sufficient to rebut that showing." Id. at 701.

24 In Demore v. Kim, 538 U.S. 510 (2003), the Court addressed the detention of criminal
25 aliens while removal proceedings are ongoing but before the statutory removal period begins.
26 8 U.S.C. § 1226(c) mandates detention during removal proceedings for deportable aliens
27 convicted of an aggravated felony. Demore v. Kim, 538 U.S. 510, 517-18 (2003). "Such
28 detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing

1 prior to or during their removal proceedings, thus increasing the chance that, if ordered
2 removed, the aliens will be successfully removed." Id. at 528. Detention of a criminal alien
3 during removal proceedings is, therefore, a constitutional part of the process. Id. at 531.

4       In Demore, however, the Court operated on the assumption that the period of
5 detention under § 1226(c) is relatively short. See id. at 528-29. In distinguishing the
6 potentially lengthy periods of detention at issue in Zadvydas, the Court stated:

> Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*. The Executive Office for Immigration Review has calculated that, in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days. Brief for Petitioners 39-40. In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter. *Id.*, at 40.
>
>     These statistics do not include the many cases in which removal proceedings are completed while the alien is still serving time for the underlying conviction. *Id.,* at 40, n. 17. In those cases, the aliens involved are never subjected to mandatory detention at all. In sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal.

16 Demore, 538 U.S. at 529-30 (footnotes omitted). The alien in Demore had been held for six
17 months, which the Court, although acknowledging was "somewhat longer than the average,"
18 found constitutionally permissible. Id. at 530-31.

19       Despite the mandatory language of § 1226(c), it is "constitutionally doubtful" that
20 Congress has the authority to imprison for excessively long periods lawfully admitted
21 criminal aliens who are subject to removal. Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir.
22 2005). In Tijani, the alien had "been deprived of his liberty by the government for a period
23 of over two years and eight months." Id. The court avoided deciding the constitutional issue,
24 but interpreted "the authority conferred by § 1226(c) as applying to expedited removal of
25 criminal aliens." Id. Because the alien's proceedings were not expeditious, the court
26 remanded the case to the district court to grant the habeas petition unless the government
27 provided the alien a bail hearing before an Immigration Judge. Id.

28

**B.     Application**

Respondent contends, and Petitioner does not dispute, that Petitioner is being held under § 1226(c). Because a stay of removal is in place and a final order has not been issued by the Ninth Circuit, Petitioner's removal period under § 1231(a)(1) has not yet begun. Additionally, there appears to be no dispute that Petitioner was taken into custody for immigration proceedings on December 13, 2005, and has remained in custody ever since.

Respondent argues that this case is distinguishable from Tijani because here, Petitioner is not a lawful permanent resident. Respondent contends that Petitioner fraudulently entered the United States by wilfully misrepresenting his marital status on his application. Respondent further contends that Petitioner has multiple criminal convictions while Mr. Tijani had only one, and that Petitioner's removal proceedings have not been as long as Mr. Tijani's. Regarding the first two distinctions, Respondent fails to explain why those differences should result in a different outcome than Tijani. As to the third distinction, the court disagrees that Petitioner's removal proceedings have been significantly less than Mr. Tijani's. Petitioner has been in custody since the issuance of the Notice to Appear, which was nearly two years and one month ago. Mr. Tijani had been in custody for over two years and eight months when the Ninth Circuit decided in his favor. Respondent has not demonstrated that this minor difference should produce a different result.

For a different reason, however, the court finds that Petitioner's case is distinguishable from and should be decided differently than Tijani. The Ninth Circuit docket shows that on October 23, 2006, 20 days after Petitioner filed his petition for review, the Court directed Petitioner to file within 21 days a declaration or notarized statement attesting to the date on which his petition for review was deposited in the institution's internal legal mail system. The Court was trying to determine if his petition for review was timely filed. On March 28, 2007, the Court issued an order stating that Petitioner had failed to file a declaration or notarized statement as previously ordered. The Court provided him one final opportunity to respond to its October 23, 2006 order. Petitioner eventually filed the required statement, as

- 5 -

1 reflected in the Court's order dated July 26, 2007. However, Petitioner's failure to file the
2 statement in a timely manner resulted in a significant delay.

3 In addition, Petitioner has sought extensions to file his opening brief. On October 15,
4 2007, Petitioner filed a motion to extend the time to file his opening brief by 60-90 days.
5 The motion was granted and the Court set a new due date of December 28, 2007. However,
6 on December 10, 2007, Petitioner again filed a motion to extend the due date for 60 days.
7 As of the date of this report and recommendation, the docket does not reflect whether the
8 motion was granted. Regardless, more than one year and three months have passed since
9 Petitioner filed his petition for review, yet the opening brief has still not been filed, due in
10 large part to Petitioner's failure to comply with the Court's order and his requests for an
11 extension.

12 The concurring opinion in Tijani noted that although Mr. Tijani requested
13 continuances, those occurred early in the case and did not contribute at all to the delay since
14 the BIA heard his appeal. Tijani, 430 F.3d at 1249 (Tashima, J., concurring). The Court
15 therefore did not find that to be a relevant factor in determining that his detention was
16 unreasonably long. Id.

17 Here, however, the court finds that the delays at the Ninth Circuit caused by Petitioner
18 are a relevant factor in determining whether Petitioner has been detained for an unreasonably
19 long period. "[C]ourts must be sensitive to the possibility that dilatory tactics by the
20 removable alien may serve not only to put off the final day of deportation, but also to compel
21 a determination that the alien must be released because of the length of his incarceration."
22 Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003). Thus, while a removable alien is certainly
23 entitled to file appeals and seek any form of relief available to him, courts should consider
24 the role of the alien in causing delays. Id. Without such consideration, removable aliens
25 would be encouraged "to raise frivolous objections and string out the proceedings in the
26 hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

27 Although Petitioner's reasons for causing delays in the Ninth Circuit are not clear
28 from the docket, the fact remains that but for those delays, Petitioner's case may have been

1  decided by now. Petitioner may not delay responding to court orders and request lengthy
2  extensions to file his brief, but then turn around and claim his detention is unreasonably long.
3  Because at this stage of the case Petitioner's continued detention is primarily a result of
4  delays that he has caused, the court finds that the time has not been unreasonably long. This
5  makes his case distinguishable from Tijani and warrants a different outcome. The court will
6  therefore recommend that the petition be dismissed without prejudice.
7  ///
8  ///
9  ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus (Doc. #1) be **denied and dismissed without prejudice**;

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 11th day of January, 2008.

_Edward C. Voss_
Edward C. Voss
United States Magistrate Judge